UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:17-cr-35-KKC

UNITED STATES OF AMERICA,                                              PLAINTIFF,

V.                                    **RECOMMENDED DISPOSITION**

DEXTER DURRELL COOPER,                                                DEFENDANT.

The Defendant, Dexter Durrell Cooper, is charged in this action with the crimes of possessing heroin, cocaine and methamphetamine with intent to distribute.  He is also charged with being a felon in possession of a firearm, and possessing the firearm during and in furtherance of the charged drug trafficking crimes.  The charges arise from an encounter Cooper had with law enforcement in the early morning hours of September 22, 2016.  Now before the Court is Cooper's motion to suppress evidence of drugs found in his pocket and in his vehicle, and a firearm found in the vehicle, in which he argues that the searches of his person and car were without probable cause.  [R. 24].  An evidentiary hearing was convened for the purpose of hearing testimony on the issues, and the matter has been submitted for the Court's consideration.  Now, for the reasons that follow, the undersigned will recommend that the motion to suppress be denied.

The facts of this matter are that at approximately 12:35 a.m. on the morning of September 22, 2016, Sergeant Jesse Palmer, with the Lexington Police Department, was sitting in his police cruiser on the side of Oak Hill Drive, in Lexington Kentucky.  While checking paperwork on a warm evening with the windows on his vehicle down, he heard gunshots coming from an area very close to and southeast of his location.  Initially he thought he was being fired upon, but

heard no bullet impacts or sounds of bullets passing by.  He radioed dispatch of the event and requested that additional law enforcement be sent to the area.  He then turned his vehicle in the direction from which the shots were heard and began to search for the scene of the shooting. Within one minute of hearing shots fired, he approached Highland Park Drive, and encountered Mr. Cooper coming toward him in a Chevrolet Impala.  There were no other vehicles or pedestrians in the area at that time, so Sergeant Palmer made a U-turn and began to follow Cooper's vehicle.  He observed Cooper execute an abrupt turn onto Carlisle Drive, and then a turn into a residential driveway.  Cooper exited his vehicle and was on the porch of the residence, appearing to knock on the door when the officer made contact with him.  Sergeant Palmer observed that the residence was dark with no interior or exterior lights on.  Considering the close proximity to the sound of gunshots, the absence of other vehicles or pedestrians, the abrupt turn made onto a side street and into a residential driveway, Palmer believed that Cooper was attempting to elude contact by appearing to enter the residence.

The officer exited his vehicle, introduced himself and informed Cooper that he was investigating an incident of shots being fired in the vicinity.  Cooper related that he was at the residence to visit a friend by the name of "Robert".  Sergeant Palmer conducted a hasty frisk which did not yield any weapons, and asked if Cooper had firearms in the car, to which Cooper replied "no".  Cooper refused to consent to a search the vehicle stating that there would be no reason to search the vehicle as he had done nothing wrong.  At that point, other officers began to arrive on the scene and together law enforcement worked to verify his story; Officer Brill made contact with a female living at the residence who denied knowing or recognizing Cooper, and informed the officers that no one named "Robert" lived there.  In addition, Officer Finley shined his flashlight into Cooper's locked vehicle and observed, in plain view, spent shell casings in the

back seat area of the vehicle.  At this point, officers believed that there was likely a firearm in the vehicle, or that one had been discarded outside the vehicle by Cooper when he got out and approached the residence.   As a result, officers cuffed and frisked Cooper a second time to check for firearms, and asked him to have a seat on the curb, restricting his movement while the investigation continued.  He was given Miranda warnings, but Cooper stated he had no information to provide the officers.  He indicated he had come from New Circle Road, which Sergeant Brill found to be unlikely as, considering his current location, would not have been the most efficient route of travel, and seemed suspicious.

Within a short time, while Cooper was still cuffed and detained, officers were informed that a report had been made of shots being fired into a residence where three people resided, within one quarter mile of the area where Sergeant Palmer encountered Cooper in his vehicle. Sergeant Palmer testified that at this point, officers suspected that Cooper had been involved in the shooting and that there were likely firearms in the vehicle.  Sergeant Palmer stated he and the other officers on the scene were trying to determine "what we had and what we could do in the investigation", and he estimated that approximately twenty minutes passed between the encounter with Cooper and the call to officers that shots were fired into a residence.  They then learned that the Chevrolet Impala Cooper was operating did not belong to him, but was a rental vehicle owned by Enterprise Rent-a-Car, so they proceeded to contact a representative from the rental agency.  However, when they learned that it could take as long as one and one-half hours for the rental agent to arrive, they remained on the scene debating what they might be able to charge and whether Cooper should be released pending further actions.  They decided to seize the vehicle, seek a search warrant and release Cooper while the investigation was pending. Ultimately, however, Cooper was frisked a third time, during which officers found drugs in one

of his front pockets.  They then decided to arrest Cooper, and proceeded to seize and impound his vehicle until they could present an application for a search warrant to a judicial officer later the same day.  The encounter lasted until approximately 2:20 a.m.

Cooper moves to suppress evidence obtained from him at the time of his arrest and from the vehicle subsequent to this encounter.  He argues that the nearly two-hour investigative detention without probable cause was unreasonable, and that the three frisks of his person extended beyond the purpose of the stop in violation of Terry v. Ohio, 392 U.S. 1 (1968).  The government contends that, although officers did not initially arrest Cooper, probable cause for his arrest existed within twenty minutes of the encounter, based upon the totality of the circumstances.  In addition, they argue that the search of his vehicle later the same day was based upon a valid warrant, and therefore not in violation of the Fourth Amendment.

## ANALYSIS

The Defendant contends that the investigatory stop in this matter matured into a lengthy detention without probable cause, requiring suppression of all items found on him and in his car. As the United States notes, however, the Defendant does not contest the legality of the initial investigatory detention or the first frisk for weapons.

The United States does not contend that officers had probable cause to arrest Cooper upon initially encountering him on the porch of a residence in Lexington, Kentucky.  Neither does Cooper argue that the officers lacked reasonable suspicion to briefly detain him for purposes of investigation.  However, Cooper argues that the detention was too long, and the multiple frisks were in violation of Cooper's rights.  However, the facts of the action establish that, under the law, Sergeant Palmer acted lawfully, and with reasonable suspicion detained Cooper for a brief time for purposes of an investigatory stop.

Temporary detention to question a suspect and conduct a quick pat-down for weapons can be justified without a warrant and with less than probable cause, but must be based upon reasonable suspicion under the totality of the circumstances.  See Terry v. Ohio, 392 U.S. 1 (1968); see also United States v. Arvizu, 534 U.S. 266 (2002); Illinois v. Wardlow, 528 U.S. 119 (2000).  Terry was a case in which a police officer observed the defendant and two other men engaged in unusual conduct, and concluded that the men were contemplating a daylight robbery. The officer approached the men, identified himself as a policeman, and asked their names.  The men "mumbled something," whereupon the officer spun the defendant around, patted down the outside of his clothing, and found a revolver in his overcoat.  In addressing a motion to suppress in that case, the Court stated:

> We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothes of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they are taken.

Terry, 392 U.S. at 30–31.

"Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention"; it is "more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity."  United States v. Bell, 555 F.3d 535, 540 (6th Cir. 2009) (quoting United States v. Cortez, 449 U.S. 411, 417–18 (1981)).  It requires

5

a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard.  United States v. Lyons, 687 F.3d 754, 763 (6th Cir. 2012).   The determination of "reasonable suspicion must be considered 'under the totality of the circumstances, considering all of the information available to law enforcement officials at the time.'" Id. at 763 (quoting Humphrey v. Mabry, 482 F.3d 840, 846 (6th Cir. 2007)).  "Officers are entitled to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id., at 763 (quoting Arvizu, 534 U.S. at 273).

When detention of a suspect for purposes of investigation occurs, it must be temporary, lasting no longer than necessary to effectuate the purpose of the stop.  Florida v. Royer, 460 U.S. 491, 500 (1983). Detention that is too long becomes a *de facto* arrest and must be based upon a higher standard of probable cause.  United States v. Orsolini, 300 F.3d 724, 730 (6th Cir. 2002).  In considering the length of an investigatory stop, "there is, however, 'no rigid time limitation on the lawfulness of a Terry stop.'"  Id. at 730 (quoting United States v. Winfrey, 915 F.2d 212, 217 (6th Cir. 1990)).  When considering the legality of temporary detention, a court should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant . . ." Id. at 730 (quoting United States v. Sharpe, 470 U.S. 675, 687 (1985)).  In United States v. Orsolini, 300 F.3d 724, 730 (6th Cir. 2002), the Court ruled that an hour long detention was reasonable where it took thirty-five minutes for officers to arrive with a drug dog, and in United States v. Garrido, 467 F.3d 971 (6th Cir. 2006), an hour-long safety inspection was permissible where attempts to corroborate the defendant's story had done nothing to dispel officers' suspicions of illegal activity by the suspect.

In the current case, Sergeant Palmer estimated that the time between his initial encounter with Cooper and when officers on the scene learned that shots had been fired into a residence in the vicinity was approximately twenty minutes.  Cooper's detention during this period of time for purposes of the investigation recounted above was not unreasonable or unjustified, in light of the facts and circumstances that officers continued to learn through their investigation. The officers possessed a reasonable suspicion based upon clearly articulable facts, which provided a "particularized and objective basis for suspecting the particular person . . . of criminal activity." Bell, 555 F.3d at 540.  The facts establish that, from an objective stand point, officers had reasonable suspicion to believe that Cooper had some involvement in the shooting that had only minutes earlier occurred.  As the facts continued to unfold, Cooper presented an explanation for his presence in the area that appeared to be untrue, that is, that there was no one named "Robert" living at the residence, and no one there knew or recognized him.  Sergeant Palmer was entitled to rely upon his own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. Lyons, 687 F.3d at 763.  In this case, the fact that Sergeant Palmer observed no other vehicles or pedestrians in the moments after hearing gunshots, witnessed Cooper make an abrupt turn, and witnessed him enter a residential driveway and approach the residence, only served to confirm Sergeant Palmer's suspicions that Cooper was attempting to evade contact with law enforcement. Finally, the discovery of spent shell casings followed by a report of shots being fired into a residence in the vicinity would lead a reasonable person, under the circumstances, to believe that Cooper was likely involved in the shooting.

Therefore, the brief detention of Cooper while officers made efforts to dispel their suspicions by attempting to verify Cooper's explanation for his presence in the area, at a home

where no one knew him, with spent shell casings in his car, following a report of shots fired into

a residence, was not an violation of the law or of his rights. Upon learning all of these facts, the

officers had reasonable suspicion that Cooper had been involved in some illegal activity, and the

first and second frisks were not in violation of his rights. In fact, at the conclusion of this first

twenty minutes, officers had probable cause to search him, and to arrest him.

"Probable cause exists when there is a fair probability that contraband or evidence of a

crime will be found in a particular place." Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir.

1998). Probable cause is defined as "'reasonable grounds for belief, supported by less than

*prima facie* proof but more than mere suspicion'" Smith, 136 F.3d at 1074 (quoting United

States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)). The court's determination of whether

probable cause existed at the time of a search is a "'commonsense, practical question' to be

judged from the 'totality-of-the-circumstances.'" Id. at 1074-75. In determining whether there

was probable cause, the court does not look to events that occurred after the search or to the

subjective intent of the officers; rather, the court looks at the "objective facts known to the

officers at the time of the search." Id. at 1075.

Probable cause to detain Cooper and search his person existed at the time officers

received a report of shots fired into a residence. Following the events previously described,

Officer Finley shined his flashlight into Cooper's locked vehicle and observed, in plain view,

two spent shell casings in the back seat area and two spent shell casings in the front seat of the

vehicle. At this point, officers reasonably believed that there was likely a firearm in the vehicle,

or that one had been discarded outside the vehicle when Cooper got out of the vehicle to

approach the residence. As a result, Cooper was cuffed and frisked a second time to check for

firearms. His detention continued while further investigation was conducted. He was given his

Miranda warnings, but Cooper stated he had no information to offer the officers.  He indicated he had come from New Circle Road, which Sergeant Brill found to be unlikely and inefficient, given his current location, and therefore suspicious.   Within a short time, while Cooper was still cuffed and detained, officers were informed that a report had been made of shots being fired into a residence where three people resided, within one quarter mile of the area where Palmer encountered Cooper in his vehicle.  Based upon the totality of the circumstances, probable cause existed to arrest Cooper and search his vehicle.

The Defendant makes much of the fact that officers on the scene were concerned about conducting a search without probable cause, possibly jeopardizing their investigative efforts.  In fact, officers doubted at times whether they had probable cause to hold Cooper or search the vehicle on the scene, opting to seize the vehicle to prevent evidence from being destroyed so that they might seek a warrant from a judicial officer.  However, the officers' subjective concerns that they lacked probable cause do not in any way limit or control the Court's analysis of this matter.  As stated in United States v. Anderson, 923 F.2d 450, 457 (6th Cir. 1991), "[j]ust as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists."

In other words, the fact that officers believed probable cause might not have existed does not mean that it did not, and the fact that they followed a safer course of impounding the vehicle while seeking a warrant from a judicial officer does not change the Court's analysis.  In this case, as in Orsolini, Cooper's detention became a *de facto* arrest and must be based upon a higher standard of probable cause.  United States v. Orsolini, 300 F.3d 724, 730 (6th Cir. 2002). However, considering the facts as recounted above, the officers had probable cause after twenty minutes and by the time they had received a report of shots being fired into a residence, and their

continued presence on the scene debating the matter did not erase or destroy the probable cause that existed.

Therefore, the Court finds, based upon the evidence, that Sergeant Palmer had reasonable suspicion to believe Cooper might be involved in discharging a firearm in the vicinity, at the time of his initial encounter.  Nothing occurred to dispel this suspicion and what officers learned only heightened their suspicions.  Their suspicions matured into probable cause for an arrest and subsequent search of his person.  The Court finds no violation of Cooper's constitutional rights under the Fourth Amendment.


**VALIDITY OF THE WARRANT**

Finally, Cooper argues that the warrant issued by a Judicial officer authorizing the search of his vehicle fails as it contains materially false information, the absence of which would have negated a finding of probable cause to search Cooper's vehicle. The alleged falsity, according to Cooper, is that in the affidavit is the statement "Due to the fact that this vehicle was observed by an officer leaving the immediate area after the shots were fired <u>and no other vehicles were observed in the area,</u> and the fact that there were four shell casings in plain view in the vehicle, the vehicle was towed to Bluegrass Towing."  This statement, Cooper contends, was a false statement knowingly made.  In fact, other law enforcement officers on the night of September 22, 2017, stopped another vehicle driven by a potential suspect leaving the area.  This separate stop lasted a little more than five minutes, and other vehicles were seen and heard passing by the officers. In addition, Cooper contends that where the affidavit states that the vehicle was towed due to "shell casings in plain view in the vehicle," the officers make a materially false representation.  Cooper contends that officers admitted that the vehicle and

Cooper were to be released until the third pat down revealed drugs in Cooper's pocket. Cooper contends that had this information been contained within the affidavit, the affidavit "*may* have lacked probable cause." [R. 24].

In situations in which courts confront allegations of materially false representations being made within search warrant affidavits, courts must determine whether there was a reckless disregard for the truth and whether the affidavit, with the false material excised, still demonstrates probable cause. See Franks v. Delaware, 438 U.S. 14 (1978). Assuming, without finding that the statements that "no other vehicles were observed in the area" was a knowingly false representation by Officer Brill, and assuming, without finding that it was made with a reckless disregard for the truth, the Court finds that the search warrant affidavit still demonstrates probable cause to search Cooper's vehicle. The objective facts set forth in the affidavit accurately show that Cooper was encountered by law enforcement leaving an area in his automobile where only moments before shots were heard. He operated his car in an abrupt manner and approached a residence as though to enter. The resident of the home informed law enforcement that she did not know or recognize Cooper, and that no one named "Robert" resided at the home, thus contradicting Cooper's statement to officers that he was at the home to visit "Robert". In addition as related in the affidavit, empty shell casings were observed in Cooper's vehicle, and while on the scene officers received a report that shots had been fired into a residence in the vicinity of the stop. As stated earlier, "probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir. 1998). Probable cause is defined as "'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion'" Smith, 136 F.3d at 1074 (quoting United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)).

11

The court's determination of whether probable cause existed at the time of a search in this case is a commonsense, practical question, judged from a review of the totality-of the-circumstances.  Id. at 1074–75.  For the same reasons that officers had probable cause to search Cooper on the scene, the warrant affidavit presents sufficient factual information to allow a judicial officer to make an objective determination, based upon the totality of the evidence presented, that there was probable cause to believe that Cooper had been involved in the shooting and that evidence of that would be found within the vehicle.  The statements with which Cooper takes issue has no impact on this finding.

## CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the officers' investigatory stop of Cooper for the purpose of investigating criminal activity was based upon reasonable suspicion that matured into probable cause to conduct an arrest.  As a result, the multiple frisks conducted on Cooper were not in violation of his rights under the Fourth Amendment.  In addition, the officers subsequently conducted a lawful search of his vehicle based upon a valid warrant.  Cooper's motion to suppress [R. 24] should be denied.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived.  United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within fourteen (14) days after being served with a

copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed July 18, 2017.



Signed By:

*Edward B. Atkins*

United States Magistrate Judge