# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### AT LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **NO. 5:17-CR-35-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **DEXTER DURRELL COOPER,** | |
| **Defendant.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on Magistrate Judge Edward B. Atkins's Recommended Disposition. (DE 44). Defendant Dexter Durrell Cooper is charged in this action with possessing heroin, cocaine, and methamphetamine with intent to distribute. He is also charged with being a felon in possession of a firearm and possessing a firearm during and in furtherance of the charged drug trafficking crimes. These charges arise from an encounter with law enforcement that occurred in the early morning hours of September 22, 2016. Cooper, who at the time was represented by counsel, filed a motion to suppress evidence obtained during that encounter. (DE 24). The Magistrate Judge conducted an evidentiary hearing and issued a written disposition recommending that Cooper's motion to suppress be denied.

Prior to the Magistrate Judge issuing his recommended disposition, Cooper expressed his intent to represent himself[1] and his second appointed attorney, Matthew Malone, submitted

---

[1] Cooper has objected to the Court's use of *pro se* to describe his status, preferring the term *pro per*. This is merely a less common, and substantively identical, synonym for *pro se* which the Court will not adopt. *pro se*, *Black's Law Dictionary*, (10th ed. 2014) ("One who represents oneself in a court proceeding without the assistance of a lawyer . . . . — Also termed *pro per* . . . ."); *pro persona*, *Black's Law Dictionary*, (10th ed. 2014) ("For one's own person; on one's own behalf . . . . Sometimes shortened to *pro per*.").

a motion to withdraw. (DE 43). The Court stayed the deadline for filing objections to the recommended disposition until after a competency evaluation was completed. (DE 46, 47). Cooper was found to be competent, granted his request to proceed *pro se*, (DE 68), and lifted its stay on the filing of objections to the recommended disposition, giving Cooper until November 28, 2017 to file objections, (DE 69). While Cooper filed six motions during that time period, he failed to submit timely objections. Cooper ultimately filed objections to the recommended disposition on December 6, 2017 (DE 89) and supplemental objections on December 7, 2017, (DE 91). Cooper also filed objections while undergoing his competency evaluation when the matter was stayed. (DE 58). The Court, however, will consider these objections on the merits. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court must make a *de novo* determination of those portions of the Magistrate Judge's Recommended Disposition to which an objection was made.

## I. Background

The facts of this case are summarized at length in the recommended disposition, but the Court will provide a brief review. At approximately 12:37 a.m. on morning of September 22, 2016, Sergeant Jesse Palmer heard gunshots nears his location on Oak Hill Drive. Sergeant Palmer radioed dispatch to report shots fired and drove his vehicle closer to the area where he encountered Mr. Cooper in a Chevrolet Impala. After Cooper made an abrupt turn down Carlisle Drive, turned into a residential driveway, and exited his vehicle, Sergeant Palmer approached him and informed him he was investigating an incident of shots fired in the area. Cooper stated that he was at the residence to visit a friend named "Robert." Sergeant Palmer conducted a hasty frisk, which did not reveal weapons, and asked Cooper if he could search his vehicle. Cooper refused to permit a search of his vehicle.

Other officers soon arrived on the scene and one of those officers shone a flashlight into the vehicle and observed, in plain view, spent shell casings on the back seat. An officer made

contact with a female living in the residence who denied knowing Cooper and stated that no one named "Robert" lived there. Believing that there was a firearm in the vehicle or nearby, the officers cuffed Cooper, frisked him a second time, and read him his *Miranda* rights. Shortly thereafter, the officers were informed that a report was made of shots being fired into a residence within one quarter mile of the area where Sergeant Palmer encountered Cooper. Officers suspected that Cooper was involved in the shooting and that there was likely a firearm in the vehicle, but were unsure how they could proceed in the investigation. They discovered that the car was a rental vehicle owned by Enterprise Rent-a-Car and contacted a representative from the agency, but were told it would take as long as one-half hour for the rental agent to arrive. Ultimately they decided to seize the vehicle, seek a search warrant, and release Cooper. Before doing so, they frisked Cooper for weapons a third time and drugs were discovered in his front pocket. They then decided to formally arrest Cooper and impound the vehicle until they could obtain a search warrant. The encounter ended at approximately 2:20 a.m.

In his motion to suppress, Cooper contends that the lengthy investigatory stop and three frisks of his person extended beyond the purpose of the stop in violation of *Terry v. Ohio*, 392 U.S. 1 (1968). He also argues that the warrant issued to search his car contained materially false information that negated the finding of probable cause. The Magistrate Judge determined that Sergeant Palmer had reasonable suspicion that Cooper was involved in the shooting because he was the only individual observed in the area, had attempted to evade Sergeant Palmer, gave a story that appeared to be untrue, and had spent shell casings in his vehicle. The Magistrate Judge found that reasonable suspicion matured into probable cause after officers received the report of shots fired into a residence, and therefore, the remaining two hours of detention, search of his person, and subsequent arrest were lawful. The Magistrate Judge also determined that the warrant to search Cooper's vehicle, even if it

contained the false statements Cooper alleged, still demonstrated probable cause justifying the search.

## II. Analysis

Cooper's first objection is that the Magistrate Judge erred in finding his detention was based on reasonable suspicion. More specifically, he claims that the Magistrate Judge relied on an altered police report dated November 7th or December 8th rather than the original police report dated September 23rd. He claims the original police report did not contain the 12:37 a.m. dispatch call made by Sergeant Palmer. He also claims that the body camera footage of Officer Brill was altered because it was shut off prior to the third *Terry* search. Finally, he argues that the officers' statements in which they doubted that they had probable cause show that the detention was unlawful. These arguments are all unavailing. First, Cooper has not presented any convincing evidence that the police report or body camera was altered. The Lexington Police Department Incident Report, introduced by Defendant as Exhibit 1 during the evidentiary hearing, was dated November 8, 2016. This does not suggest that the report was "manufactured" after the fact, as Cooper claims, but rather that the report was produced on that date.[2] Cooper's claim that the body camera was altered also has no merit or relevance to the reasonable suspicion inquiry. Shutting off a camera is not equivalent to altering evidence, and Officer Brill did not turn off the camera until the third *Terry* search occurred. This was well after probable cause was established based on Sergeant Palmer hearing the shots fired, Cooper being the only individual present in the area, his attempts to elude Sergeant Palmer, his false story about why he was at the residence, the presence of spent casings in his vehicle, and the report of shots being fired into a residence. The officers' subjective belief that they lacked probable cause is also not

---

[2] Similarly, the first police report dated, which Cooper claims to be the unaltered original, is dated September 23, 2016, likely the date it was produced, rather than September 22, 2016, the date of the incident.

relevant because, as the Magistrate Judge explained, "a subjective belief by the arresting officer cannot destroy probable cause where it exists." *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991).

Cooper also objects to the Magistrate Judge's determination that the *Terry* stop and frisk was unlawful in scope. First, he claims that frisk, during which drugs were discovered in his front pocket, went beyond the "narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual" permitted by *Terry*. 392 U.S. at 27. This argument is misguided. The Magistrate Judge determined that probable cause existed at the time officers received a report of shots fired into a residence. But the key factor in establishing probable cause occurred shortly before then, when Officer Finley observed spent shell casings in plain view in Cooper's vehicle. When Cooper was cuffed and *Mirandized* immediately thereafter the interaction had progressed from a detention under *Terry* to a *de facto* arrest based on probable cause. *See Gardenhire v. Schubert*, 205 F.3d 303, 314 (6th Cir. 2000) (holding a *Terry* stop progressed into an arrest requiring probable cause even where the arrest was not formal); *see also See United States v. Vite-Espinoza*, 342 F.3d 462, at 473-74 (6th Cir. 2003) (Clay, J., concurring) (collecting cases where *Terry* stops progressed into *de facto* arrests). This arrest was based on probable cause and therefore the two subsequent frisks of Cooper were valid as searches incident to a lawful arrest. *See United States v. Robinson*, 414 U.S. 218, 234 (1973) ("The standards traditionally governing a search incident to lawful arrest are not, therefore, commuted to the stricter Terry standards by the absence of probable fruits or further evidence of the particular crime for which the arrest is made.").

Cooper's next objection is that the detention was unreasonable in scope because officers prolonged the detention to search for drugs. This argument fails for similar reasons. Once

officers observed the shell casings in his vehicles officers had probable cause to arrest him and, in fact, did effectuate a *de facto* arrest. An investigative stop pursuant to *Terry* must be temporary and no longer than necessary to effectuate the purpose of the stop. *See Florida v. Royer* 460 U.S. 491, 500 (1983). But, as explained above, after officers discovered the shell casings, Cooper's detention was based on probable cause, not mere reasonable suspicion.[3] Therefore, the investigative scope requirements imposed by *Royer* are irrelevant.[4] Moreover, officers did not prolong the detention to carry out a drug investigation. The detention was prolonged as officers decided how to proceed with searching Cooper's vehicle, made attempts to contact a representative for Enterprise Rent-a-Car, and towed the vehicle for impound. All of these investigative steps were related to the report of shots fired, not a drug investigation.

Cooper has not specifically objected to the Magistrate Judge's determination regarding the validity of the warrant. In his motion to suppress, Cooper alleged that the statement "no other vehicles were observed in the area" was a knowingly false representation by Officer Brill. The Magistrate Judge assumed, without finding, that this was a false statement and disregarded it, but found that the affidavit still demonstrated probable cause. *See Franks v. Delaware*, 438 U.S. 154 (1978) (holding that a search warrant containing intentional or reckless false statements is only voided if "the affidavit's remaining content is insufficient to

---

[3] While the Court finds that Cooper's *de facto* arrest occurred once he was handcuffed and given his *Miranda* warnings, to the extent that he argues the length of the detention caused the stop to mature into an arrest, the resulting *de facto* arrest was lawfully based on probable cause for the reasons discussed above. *Cf. United States v. Orsolini*, 300 F.3d 724, 729 ("Although an officer may have reasonable suspicion to detain a person or his possessions for investigation, the officer's investigative detention can mature into an arrest or seizure if it occurs over an unreasonable period of time or under unreasonable circumstances.") (quoting *United States v. Avery*, 137 F.3d 343, 349) (internal quotation marks omitted).

[4] Even if Cooper's detention was not based on probable cause, that would not necessitate a finding that the length of the detention was unreasonable. A nearly unanimous Supreme Court has favored seizing individuals while a search warrant is obtained for property. *See Illinois v. McArthur*, 531 U.S. 326 (2001) (holding that a two hour detention of an individual outside his home while officers obtained a search warrant was reasonable). At least one circuit court has applied that reasoning to a detention while a warrant was obtained for a vehicle. *See United States v. Cantu*, 405 F.3d 1173, 1178-80 (10th Cir. 2005) (holding that a two hour detention while officers obtained a search warrant for a vehicle was reasonable). That is similar to the overly cautious course of action—contacting the vehicle rental agency and impounding the vehicle to obtain a search warrant—pursued by the officers in this case.

establish probable cause"). Reviewing this determination *de novo*, the Court agrees with the Magistrate Judge's determination. The objective facts set forth in the affidavit that Cooper attempted to elude Sergeant Palmer, made false statements for why he visited the home, had spent shelling casings in his vehicle, and that a report was made that shots had been fired into a residence in the vicinity of the stop combine to constitute probable cause to search the vehicle.[5]

### III. Conclusion

For the foregoing reasons, the Court **HEREBY ORDERS** that:

1) except where this Opinion and Order expressly deviates, the Magistrate Judge's Recommended Disposition (DE 44) is **ADOPTED** as and for opinion of the Court;

2) the Defendant's objections to the Magistrate Judge's Recommended Disposition (DE 58, 89, 91) are **OVERRULED**

3) the Defendant's Motion to Suppress (DE 24) is DENIED.

Dated January 4, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

---

[5] While officers' obtained a warrant to search the vehicle, the search would have also been valid under the automobile exception if it was searched during the stop because, upon discovering the spent shell casings, probable cause existed that the vehicle contained evidence of a crime. *See United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) ("Under the automobile exception to the warrant requirement, law enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime.").