# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>DEXTER DURRELL COOPER,<br>    Defendant. | CRIMINAL NO. 5:17–CR–35–KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Dexter Durrell Cooper's motion to suppress evidence seized from his person and vehicle on September 22, 2016. (DE 176) For the reasons discussed below, Cooper's motion is denied.

## I. Procedural Background

Cooper is charged in this action with possessing heroin, cocaine, and methamphetamine with intent to distribute. He is also charged with being a felon in possession of a firearm and possessing a firearm during and in furtherance of the charged drug trafficking crime. These charges arise from an encounter between Cooper and law enforcement that occurred in the early morning hours of September 22, 2016 and which resulted in a search of his vehicle where the narcotics and firearm were ultimately located. Cooper previously, while represented by attorney Matthew Malone, filed a motion to suppress the evidence obtained from that search, arguing that the length of his detention was unreasonable, the number of frisks extended beyond the purpose of the stop, and the search warrant allowing officers to search his vehicle lacked probable cause. (DE 24.) A suppression hearing was held before Magistrate Judge Edward B. Atkins, (DE 38), and the Magistrate Judge issued a

recommended disposition denying Cooper's motion, (DE 44.) Prior to the issuance of the recommended disposition, Cooper expressed his desire to proceed *pro se* and his attorney filed a motion to withdraw. (DE 43.) The Court stayed the deadline for filing objections to the recommended disposition while a competency evaluation was performed. (DE 46.) After the stay was lifted, the Court considered Cooper's *pro se* objections to the Magistrate Judge's decision. Cooper primarily objected to the Magistrate Judge's finding that the officers stop and frisk was lawful in scope and length. After considering these objections *de novo* the Court denied Cooper's motion to suppress. (DE 107.)

While proceeding *pro se*, Cooper filed a number of motions which reasserted arguments made in his motion to suppress. Those motions were addressed and denied by the Court. (DE 158.) Shortly before Cooper's scheduled trial date, attorney John Tennyson filed a motion to appear *pro hac vice*. (DE 168.) After holding a telephone status conference with Cooper's newly retained counsel, the Court granted Cooper additional time to file defensive motions. (DE 175.) Cooper, through counsel, has filed a renewed motion to suppress. (DE 176.) The United States has responded and Cooper has replied. This matter is now ripe for review.

**II. Factual Background**

The basic facts, as summarized in the Court's prior opinion (DE 107), are as follows:

> At approximately 12:37 a.m. on morning of September 22, 2016, Sergeant Jesse Palmer heard gunshots nears his location on Oak Hill Drive. Sergeant Palmer radioed dispatch to report shots fired and drove his vehicle closer to the area where he encountered Mr. Cooper in a Chevrolet Impala. After Cooper made an abrupt turn down Carlisle Drive, turned into a residential driveway, and exited his vehicle, Sergeant Palmer approached him and informed him he was investigating an incident of shots fired in the area. Cooper stated that he was at the residence to visit a friend named "Robert." Sergeant Palmer conducted a hasty frisk, which did not reveal weapons, and asked Cooper if he could search his vehicle. Cooper refused to permit a search of his vehicle.
>
> Other officers soon arrived on the scene and one of those officers shone a flashlight into the vehicle and observed, in plain view, spent shell casings on the back seat. An officer made contact with a female living in the residence who denied knowing Cooper and stated that no one named "Robert" lived there. Believing that there was a firearm

2

in the vehicle or nearby, the officers cuffed Cooper, frisked him a second time, and read him his Miranda rights. Shortly thereafter, the officers were informed that a report was made of shots being fired into a residence within one quarter mile of the area where Sergeant Palmer encountered Cooper. Officers suspected that Cooper was involved in the shooting and that there was likely a firearm in the vehicle, but were unsure how they could proceed in the investigation. They discovered that the car was a rental vehicle owned by Enterprise Rent-a-Car and contacted a representative from the agency, but were told it would take as long as one-half hour for the rental agent to arrive. Ultimately they decided to seize the vehicle, seek a search warrant, and release Cooper. Before doing so, they frisked Cooper for weapons a third time and drugs were discovered in his front pocket. They then decided to formally arrest Cooper and impound the vehicle until they could obtain a search warrant. The encounter ended at approximately 2:20 a.m.

(DE 107, at 2-3.)

**III. Analysis**

Cooper argues that Sergeant Palmer lacked reasonable suspicion to initially detain him. He therefore seeks to suppress all evidence obtained from the later search of his person and vehicle as fruit of the poisonous tree. *See generally Wong Sun v. United States*, 371 U.S. 471 (1963). He asserts that the Court's prior opinion relied incorrectly on the fact that Cooper was the only individual in the area after Sergeant Palmer heard shots fired. He claims that discovery has revealed that officers had in fact stopped another vehicle in the area.

As a threshold matter, the United States argues that the Court has already heard evidence concerning the second vehicle stop and therefore reconsideration is not warranted. As the United States notes, officers testified extensively about the second vehicle stop during the suppression hearing on July 11, 2017.[1] In Cooper's first motion to suppress, however, he

---

[1] Cooper does not discuss this testimony in his motion and, in his reply brief, states that his counsel "does not have the benefit of the hearing transcript that the Government does." (DE 182.) Cooper and his counsel, however, were entitled to request a transcript of the hearing. *See* Admin. Office of the U.S. Cts., Transcript Order (AO 435), *available at* http://www.uscourts.gov/sites/default/files/ao435.pdf. Cooper requested transcripts for this hearing previously, (DE 49), but they were not delivered because he did not pay for them. The United States did not rely on a transcript in its response brief, citing instead to the audio recording of the hearing, which Cooper and his counsel could have also requested. *See* Admin. Office of the U.S. Cts., Audio Recording Order (AO 436), *available at* http://www.uscourts.gov/sites/default/files/ao436.pdf.

did not argue that the officers lacked reasonable suspicion to briefly detain him for investigative purposes. (DE 44, at 4.) Accordingly, and consistent with the Court's prior Order permitting additional defensive motions (DE 175), the Court will consider Cooper's new arguments regarding the second vehicle stop.

It is also necessary for the Court to further discuss the facts related to the traffic stop of the second vehicle, which was not a focus of the Court's prior opinions. At the evidentiary hearing before the Magistrate Judge, Sergeant Palmer testified that he was aware that another officer made a traffic stop, which he heard over the radio when he was arriving at the Carlisle Avenue residence to make initial contact with Cooper. (July 11, 2017 Hr'g, 15:15–16:00.) He did not know, but assumed, that the traffic stop was related to his dispatch call, and claimed that he was "a bit frustrated" that the officer had stopped another vehicle rather than providing him backup. (*Id.*) He was not aware that those officers removed the driver from the car and searched his vehicle. (Hr'g 16:00.) Officer Finley also testified that he believed that the reason for the stop was the report of shots fired. (Hr'g 51:50.) Officer Brill testified that Officer Mascoe made the traffic stop at Bryan Road and Glenn Place after Sergeant Palmer's dispatch call, (Hr'g 59:30–45.) That intersection, however, "wasn't as close as Carlisle Avenue" to the area where Sergeant Palmer reported shots were fired, (Hr'g 1:00–1:00:15.) The officers ultimately determined that the vehicle was not related to the investigation and a warning was issued to the driver. (Hr'g 1:00:15–1:00:30; 1:18:35–1:18:45.)

It is well established that "where a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances." *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The Sixth Circuit has described reasonable suspicion as requiring:

4

more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a *Terry* stop.

*United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (quoting *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008)). Accordingly "[w]hether an officer has reasonable, articulable suspicion of criminal activity," requires consideration of "the totality of the circumstances presented to the officer." *United States v. Winters*, 782 F.3d 289, 298 (6th Cir. 2015) (quoting *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012)).

The totality of the circumstances known to Sergeant Palmer at the time he detained Cooper consisted of the following facts: (1) Sergeant Palmer "heard several gunshots to the south of [his] location;" that were "loud and close," (Sergeant Palmer Police Report, DE 182-1); (2) Cooper was observed, "less than a minute" later, at approximately 12:38 a.m., driving away from the area where the shots were heard, (Hr'g 2:55); (3) Sergeant Palmer did not personally observe any other vehicles or pedestrians in the area, (Hr'g 3:20); (4) after Sergeant Palmer performed a U-turn and began following him, Cooper appeared, based on Sergeant Palmer's experience and training, to elude the police car by abruptly turning onto Carlisle Avenue, into an unlit residential driveway, and approaching the unlit residence, (Hr'g 4:30); and (5) another officer had stopped a second vehicle, further away from his location, for a traffic violation, which Sergeant Palmer assumed was related to his shots fired call, (Hr'g 15:15–16:00).

Considering the above facts, Sergeant Palmer's initial detention of Cooper was based on reasonable suspicion. Sergeant Palmer observed Cooper driving away from the area where he had, less than a minute before, heard shots being fired. There was no one else in the immediate vicinity and Cooper engaged in the type of evasive behavior that is well recognized as supporting reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000)

5

("Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."). Sergeant Palmer did not observe any pedestrians or vehicles in the area, but was aware that another officer had stopped a vehicle. The Court finds, however, that Sergeant Palmer's mere awareness that a second officer independently initiated a traffic stop further away from where he heard shots fired and encountered Cooper does not eliminate reasonable suspicion. At the time, Sergeant Palmer knew that Cooper was the individual closest to where he heard shots fired, was driving away from that area, and was engaging in evasive behavior. That is sufficient to establish reasonable suspicion.

Cooper primarily relies on *United States v. Johnson*, 620 F.3d 685 (6th Cir. 2010) in support of his motion to suppress. That case is factually distinguishable. There, officers stopped a narcotics suspect because:

> (1) [the defendant] was in a high drug-trafficking area; (2) it was 4:00 a.m.; (3) the officers were responding to a 911 call; (4) two or three minutes after the 911 call, the officers observed [the defendant] twenty to thirty yards from the blue Cadillac referenced in the call and near the residence from which the call was made; (5) the officers did not notice anyone else in the area, besides the driver of the white car to which [the defendant] was headed; (6) [the defendant] did not stop when called to by the officers [the defendant] instead continued walking toward the white car; and (7) he was carrying a bag, which he threw into the white car.

*Id.* at 692. The court of appeals discounted the fact that the defendant was present in a high drug-crime trafficking area at a late hour because there was no evidence that he was involved in actual criminal activity. *Id.* at 692–93. In contrast, Cooper was not stopped for merely for being in a generally high-crime area. Cooper was observed leaving the area where shots were fired within the last minute. The *Johnson* court also noted that the anonymous 911 call did not allege any criminal activity. *Id.* at 693–94. Sergeant Palmer, however, was responding to likely criminal activity based on hearing shots fired. Finally, the *Johnson* court found that the defendant had not engaged in evasive behavior because he "did not change course or otherwise react suspiciously to the police. He did not react at all." *Id.* at 695. Cooper did

6

change course, turning abruptly down Carlisle Avenue and into a residential driveway after Sergeant Palmer began following him. Moreover, the residence was unlit and, based on his training and experience, Sergeant Palmer believed he was trying "to elude police contact by pulling into a residence and acting as if he lived there or was there to visit somebody." (Hr'g 4:30–4:50.)

Cooper's final argument is that the officers were stopping all vehicles in the area, whether or not they had reasonable suspicion. This argument is also unavailing. Whether other officers violated a third parties Fourth Amendment rights is irrelevant to this motion to suppress. *See Rakas v. Illinois*, 439 U.S. 128, 148 (1978) (holding an individual who "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized" lacked standing to challenge the seizure). What matters, and why Cooper's motion fails, is that Sergeant Palmer had reasonable suspicion to stop Cooper.

## IV. Conclusion

For the reasons set forth above, the Court **HEREBY ORDERS** that Defendant's Motion to Suppress Fruits of Illegal Search and Seizure (DE 176) is **DENIED**.

Dated April 23, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY