UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:17-CR-35-KKC
(Related Civil Action No. 5:20-CV-87-KKC)

UNITED STATES OF AMERICA,                                              PLAINTIFF,

V.                                    **RECOMMENDED DISPOSITION**

DEXTER DURRELL COOPER,                                              DEFENDANT.

*** *** *** ***

Dexter Durrell Cooper, proceeding *pro se*, brings this action pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence of 120 months. [R. 187, 192, 200, 220, 227]. Having been fully briefed, this matter is now ripe for review. This Court recognizes that Cooper is proceeding *pro se* and construes his motion more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003). Nevertheless, due to the following procedural and substantive deficiencies in his motion to vacate, Cooper fails to establish that he is entitled to relief under 28 U.S.C. § 2255. Therefore, it is RECOMMENDED that Cooper's motion to vacate be DENIED.

## I.    FACTS AND PROCEDURAL HISTORY

While on appeal from the District Court's denial of his suppression motion, the Sixth Circuit recounted the facts of this case as follows:

On September 22, 2016, around 12:37 a.m., Lexington Kentucky police sergeant Jesse Palmer was doing paperwork in his cruiser when he heard eight gunshots from the southeast— loud enough that he thought at first that someone was shooting at him. Palmer reported the gunshots to dispatch, then turned his cruiser around and drove south to investigate. Less than a minute later, he saw a charcoal-gray Chevy Impala approaching from the south, moving away from where the gunshots had been. Palmer turned around to tail the car. At first, the other driver proceeded normally, but soon he turned abruptly onto a cross street and parked in the driveway

of a darkened house. The driver exited his car and walked up to the house's front porch.

Palmer pulled up to the house, got out of his cruiser, and introduced himself to the driver, who identified himself as Dexter Cooper. Palmer said he was investigating the gunshots and asked Cooper why he was in the area. Cooper said he was at the house to visit a friend named "Robert." Palmer frisked Cooper, found nothing, and asked for consent to search the car. Cooper refused, but agreed to sit on the curb while Palmer waited for backup to arrive.

A few minutes later, officers Caleb Brill and John Finley arrived. They looked through the windows of Cooper's car and saw shell casings in plain view. Finley handcuffed Cooper and frisked him, again without finding anything. The officers also talked to a woman who lived in the house, who said that no one named "Robert" lived there. Palmer doubted that he had probable cause for an arrest, so he decided to tow the car and release Cooper. Before the officers did so, however, Brill frisked Cooper once more—and found cocaine in his pocket.

The police then arrested Cooper. Later that day, the officers obtained a warrant to search Cooper's car, where they found a 9mm pistol with one round either in the clip or in the chamber, eight shell casings, heroin, crack cocaine, methamphetamine, and drug paraphernalia. The government thereafter charged Cooper with possession of a firearm in connection with drug trafficking, possession of a firearm as a felon, and possession of heroin, cocaine, and methamphetamine with intent to distribute.

Cooper moved to suppress the evidence found in his car. The district court held an evidentiary hearing at which Palmer, Brill, and Finley testified; afterward, the court denied the motion. Cooper later pled guilty to two of the five charges, reserving the right to appeal the denial of his motion to suppress. The district court sentenced Cooper to 120 months' imprisonment. This appeal followed.

[R. 206 at p. 1-3]; *United States v. Cooper*, 778 Fed.App'x 396, 397-98 (6th Cir. 2019).

Cooper's first motion to suppress (filed by CJA appointed counsel Matthew Ryan Malone) argued that he was unlawfully detained and subjected to multiple frisks that extended beyond the purpose of the stop. [R. 24]. He also asserted a *Franks* violation in relation to the search warrant. [*Id.*] An evidentiary hearing was held before the undersigned on July 10, 2017. [R. 38]. At the evidentiary hearing, the Court heard testimony from three offices and viewed and listened to audio/video recordings of Cooper's stop. [*Id.*] The undersigned recommended Cooper's first

motion to suppress be denied, and the District Court adopted the recommended disposition, finding that "probable cause was established based on Sergeant Palmer hearing the shots fired, Cooper being individually present in the area, his attempts to elude Sergeant Palmer, his false story about why he was at the residence, the presence of spent casings in his vehicle, and the report of shots being fired into a residence." [R. 44, 107 at p. 4].

Cooper subsequently renewed his motion to suppress when he obtained new counsel (John Tennyson), arguing that newly discovered evidence (provided by the government after his first motion to suppress) showed another vehicle was in the area and pulled over by some of the same officers investigating Cooper. [R. 176 at p. 1]. The District Court agreed to address Cooper's argument concerning the lack of reasonable suspicion to initially detain him, but ultimately rejected this argument, finding "Sergeant Palmer observed Cooper driving away from the area where he had, less than a minute before, heard shots fired. There was no one else in the immediate vicinity and Cooper engaged in the type of evasive behavior that is well recognized as supporting reasonable suspicion." [R. 184 at p. 5]. The District Court further rejected Cooper's argument concerning the other vehicle, finding that the officers "determined that the [other] vehicle was not related to the investigation." [*Id.* at p. 4].

Three days after the District Court's second denial, Cooper filed a motion for a rearraignment. [R. 185]. At the rearraignment, Cooper was sworn in and entered a conditional guilty plea to possession with intent to distribute heroin and possession of a firearm in furtherance of a drug trafficking crime. [R. 187, 188 at p. 1]. The only issue Cooper reserved the right to appeal (outlined explicitly in his plea agreement) was "[w]hether officers possessed a reasonable and articulable suspicion that Cooper had been involved in criminal activity and could be detained briefly while the officers investigated their suspicion." [R. 188 at p. 1]. Otherwise, Cooper waived

"the right to appeal the guilty plea, conviction, and sentence" and "except for claims of ineffective assistance of counsel, [Cooper] also waive[d] the right to attack collaterally the guilty plea, conviction, and sentence." [*Id.* at ¶ 8]. After a thorough evaluation and explanation to ensure that Cooper understood the charges against him and the consequences of pleading guilty, the District Court found him guilty and set the matter for sentencing. [R. 187, 200]. On August 15, 2018, the District Court sentenced Cooper to the mandatory term of 120 months imprisonment. [R. 192].

Consistent with the terms of the plea agreement, Cooper timely appealed the District Court's suppression ruling, and the Sixth Circuit affirmed the conviction.[1] [R. 193, 206]. Similar to the District Court, the Sixth Circuit found the following circumstances gave rise to the officer's reasonable suspicion: (1) the detaining officer heard several gunshots so close he believed he was being shot at, (2) "less than a minute" later the officer saw Cooper's car approach from the direction of the shots, (3) the officer began to follow Cooper, who made a "quick, abrupt turn," in what appeared to be an effort to elude the officer, and (4) Cooper was the only person the officer saw coming from the area of the gunshots. [R. 206 at p. 3-4]. The Sixth Circuit specifically rejected Cooper's arguments that "Palmer heard the gunshots 37 minutes before he encountered Cooper, rather than 'less than a minute' before." [*Id.* at p. 4]. The Sixth Circuit explained that "nothing in [the internal police reports and dispatch logs] or elsewhere in the record [e.g., footage of another traffic stop] does much to refute Palmer's unequivocal testimony." [*Id.*]

Following this denial, Cooper timely filed his motion to vacate his sentence based on

---

[1] The Sixth Circuit outlined the issues in Cooper's appeal in more detail, as follows:

> Dexter Cooper entered a conditional guilty plea for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of drug trafficking offenses, in violation of 18 U.S.C. § 924(c)(1)(A). He now argues that the police detained him unlawfully, and that the district court should have suppressed evidence that the police obtained as a result of that detention. We reject Cooper's arguments and affirm.

*United States v. Cooper*, 778 Fed.App'x at 397.

substantive errors and claims of ineffective assistance of counsel. [R. 220 (original motion to vacate), 227 (corrected motion to vacate on court-supplied form)]. Specifically, Cooper's motion to vacate raises four broad grounds of error: (1) invalid plea agreement based on the government's failure to disclose *Brady* evidence during the plea negotiations, (2) his constitutional rights were violated when the District Court did not hold a *Frank*'s hearing concerning the other traffic stop and the dispatch logs, which Cooper argues rendered Brill's statements in the search warrant affidavit false when he said "no other cars were observed in the area", (3) a constitutional violation under the "silver platter doctrine", and (4) six claims of ineffective assistance of counsel. [R. 227 at p. 4-35]. The United States argues that Cooper's claims are premised on his already-rejected suppression arguments and are all without merit to grant his requested relief. [R. 271 at p. 6].

## II.    STANDARD OF REVIEW

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. Pursuant to 28 U.S.C. § 2255, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003). If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due

process. *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

## III.    ANALYSIS

### Ground 1: *Brady* Claim:

Cooper's first argument states that his plea agreement is invalid because the government failed to disclose *Brady* evidence. [R. 227 at p. 13]. The government argues that this argument should fail because Cooper failed to raise this claim on direct appeal, and Cooper should not be afforded the opportunity to circumvent the direct appeal process. [R. 271 at p. 6].

"[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 622 (1998). A motion to vacate under Section 2255 does not substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). The procedural default doctrine bars "claims that could have been raised on direct appeal[] but were not[,]" except for those claims of ineffective assistance of counsel. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *Bousley*, 523 U.S. at 621. Here, Cooper concedes that he did not raise his *Brady* claim on direct appeal. *See* [R. 227 at p. 4 (section (b)(1) shows Cooper checked "No" to the question "If you appealed from the judgment of conviction, did you raise this issue?"].

Nevertheless, "[i]n the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he must also show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528. In other words, if a defendant fails to establish cause, then it is unnecessary for a court to determine if he was prejudiced by the alleged violation. *Bousley*, 523 U.S. at 623. Additionally, if a defendant

cannot establish cause and actual prejudice for his procedural default, then he may still obtain review of a claim in a collateral proceeding if he can establish actual innocence. *Id.*

Generally, a true *Brady* violation "implicitly constitutes a *per se* excuse (cause' and 'prejudice') for procedural default in habeas review." *Apanovitch v. Houk*, 466 F.3d 460, 473-74 (6th Cir. 2006). However, the rationale underlying the general rule is inapplicable when the defendant has the *Brady*-predicate at the time of a direct appeal (or non-existent, as it appears here). Documents suppressed at trial but disclosed before appeal would not fit within a presumed cause and prejudice model because the defendant would have the evidence (and thus the claim) to present an appeal. *See e.g.*, *Sullivan v. United States*, 587 Fed. App'x 935, 944 (6th Cir. Oct. 16, 2014) ("Sullivan has procedurally defaulted on any *Brady* claim concerning these documents because his appellate counsel, who had these documents, did not raise them on direct appeal").

Cooper does not show that any *Brady* evidence was presented to him after his direct appeal. In fact, Cooper fails to point to any non-disclosed evidence by the government. He instead appears to again challenge the District Court and Sixth Circuit's review of the evidence supporting the reasonable suspicion finding. [R. 227 at p. 4, 13]. His reason for not raising this issue on appeal was because his former attorney Jeff Brandt (Cooper's attorney on appeal)[2] opted to exclude "the actual body cam depiction of Affiant C.N. Brill." [R. 227 at p. 4]. However, Cooper seems to rely on the new evidence he received from the government before he filed his second, unsuccessful, motion to suppress. *See* [R. 176]. Because the government disclosed this information, it cannot be the basis of his *Brady* claim. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ("evidence must have been suppressed" to show a *Brady* violation).

But construing Cooper's Brady claim broadly, his failure to raise any alleged non-disclosed

---

[2] *See* [R. 227 at p. 10, ¶15e].

evidence on direct appeal cannot be excused. *See Smith v. Murray*, 477 U.S. 527, 535 (1986) (holding that the "cause" inquiry probes "whether at the time of the default claim was available at all" (internal quotation marks removed)); *see also Albrecht v. Horn*, 485 F.3d 103, 130 (3d Cir. 2007) (holding that the defendant did not "show cause" for his failure to raise a *Brady* claim "because these statements were available at the time of his direct appeal"); *Finley v. Johnson*, 243 F.3d 215, n.4 (5th Cir. 2001) (noting that the defendant did not "advance the theory that he did not raise this [*Brady*] issue on direct appeal . . . because the existence of the undisclosed evidence was not known . . . at the time that he could have appealed" and therefore "has failed to show cause for his procedural default"); *Scott v. Mullin*, 303 F.3d 1222, 1228 (10th Cir. 2002) (implying that default would apply if Scott had been "aware of the existence of the [pertinent] evidence at the time of his direct appeal"). Therefore, Cooper has not shown good cause and prejudice for his failure to directly appeal his *Brady* claim.

As an alternative to showing cause and prejudice, a movant may also raise a procedurally defaulted claim on § 2255 if he can demonstrate "he is actually innocent." *Regalado*, 334 F.3d at 528. Although Cooper continues to rely on alleged inconsistencies with the facts that occurred the night he was arrested (as he had with the District Court and the Sixth Circuit), he does not maintain that he is actually innocent. *See* [R. 227 at p. 4 ("This is not specific reasonable articulable suspicion for Defendant Cooper being Depicted 'After shots fired dispatch one minute later @ 12:38 AM that would legally support 4th Requirements")]. In other words, although Cooper may inferably reference that he is innocent, he does not explore the parameters of the "actual innocence" excuse for default. *Bousley*, 523 U.S. at 622 ("To establish actual innocence, petitioner must demonstrate that, in light of all evidence, it is more likely than not that no reasonable juror would have convicted him." (internal quotation marks omitted)). Cooper simply makes no genuine

approach to demonstrating actual innocence. He has also been afforded ample opportunity to challenge the evidence through suppression motions and on appeal. [R. 24, 176, 206]. Therefore, Cooper has not shown actual innocence.

In sum, this Court finds that Cooper procedurally defaulted, without excuse or exception, his *Brady* claims. Cooper does not demonstrate good cause for his failure to challenge his sentence on direct appeal or show that he is actually innocent of the crime charged. Therefore, it is recommended that Cooper's assertion of failure to disclose *Brady* evidence in ground one of his motion to vacate be deemed procedurally defaulted.

**Grounds 2-3: *Frank*'s Hearing and Silver Platter Claims**:

Cooper next argues that he was entitled to a *Frank*'s hearing, and the District Court erred by not holding a hearing, because Brill's statements in the search warrant were false. [R. 227 at p. 5, 17-19]. Cooper also asserts an alleged violation of the "silver platter doctrine."[3] [R. 227 at p. 20-22]. The United States argues that these claims are barred under the plea agreement because they were not reserved as an appealable issues in his conditional plea agreement. [R. 271 at p. 8].

On April 27, 2018, the parties entered into a plea agreement. [R. 188 (entered into the record on April 30, 2018)]. As part of the plea agreement, which the District Court accepted, Cooper was permitted to reserve the single issue of "whether officers possessed a reasonable and articulable suspicion that Cooper had been involved in criminal activity and could be detained briefly while the officers investigated their suspicion." [*Id.* at p. 1]. Otherwise, the plea agreement indicated that Cooper was waiving "the right to appeal the guilty plea, conviction, and sentence," as well as "the right to collaterally attack his guilty plea, conviction, and sentence." [*Id.* at ¶ 8].

---

[3] This theory "was developed . . . when the Fourth Amendment did not apply to the states . . . and evidence seized pursuant to a legal search conducted by state officers, although illegal under the Fourth Amendment, could be handed over 'on a silver platter' for use in a federal criminal prosecution." *United States v. Meredith*, 107 F.3d 872, 1997 WL 73265, at *8 (6th Cir. 1997).

Cooper pled guilty to Counts 1 and 4 (possession with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin and possession of a firearm in furtherance of drug trafficking). He also agreed that the United States could prove the following material facts beyond reasonable doubt to establish the essential elements:

(a) In the early morning hours of September 22, 2016, Lexington Police Officers heard gun shots fired in the area of Oakhill Drive. A short time later, officers made contact with Dexter Cooper, who was operating a Chevy Impala. Officers encountered Cooper when he parked his car near a residence on Carlisle Avenue, which was in dose proximity to where officers heard the gun shots. Officers observed spent shell casings in plain view in Cooper's car. Cooper was detained pending further investigation. Cooper claimed to have been at the Carlisle residence to visit a friend. Officers spoke with an occupant of the residence who stated she did not know Cooper. While speaking with Cooper, officers observed a large bulge in Cooper's front right pocket and conducted a Terry frisk. During the pat-down, officers discovered a package containing several smaller packets of drugs (cocaine and heroin) in Cooper's pocket. Cooper was arrested and his car impounded.

(b) Officers applied for a search warrant for Cooper's car. During the search, officers discovered a 9-millimeter Beretta handgun under the driver's seat, 8 spent 9mm shell casings in the back seat, and a backpack on the passenger side floorboard. The backpack contained numerous bags of drugs, some already packaged for individual resale. The drugs were sent to the Kentucky State Police Laboratory for forensic testing. Testing confirmed that Mr. Cooper possessed 11.484 grams of cocaine, 29.504 grams of methamphetamine, and 124.739 grams of a heroin/fentanyl mix. The combined marihuana equivalency of these controlled substances is 373 kilograms of marihuana.

(c) Based on further investigation, officers confirmed that the 9-millimeter Beretta handgun crossed state lines and traveled in interstate commerce. Officers also conducted a firearm functions test and confirmed that the firearm functioned as designed. The firearm was located in close proximity to the drugs on Defendant's person and the backpack on the passenger side floorboard, and the Defendant admits that the firearm was possessed in furtherance of the drug trafficking crimes.

[*Id.* at p. 2-3].

Cooper's competency and voluntariness of entering into this agreement was inquired into by the District Court at his rearraignment. [R. 187]. According to the transcript, the District Court

questioned Cooper to establish his competency to plead guilty. [R. 199 at p. 4-6]. The District Court then inquired into the voluntariness of Cooper entering into the plea agreement, explained to him the implications, and recognized that his plea was conditional on the Sixth Circuit's review of his reasonable suspicion objection. [*Id.* at p. 6-8]. Cooper admitted that he read the plea agreement, had his lawyer explain it to him, he understood it, he signed it, and that no one threatened him. [*Id.* at p. 8]. AUSA Bradley then explained the essential terms of the plea agreement. [*Id.* at p. 10-13]. After a thorough review of the plea agreement with Cooper, the District Court found him to be competent to enter into the plea agreement and found he did so voluntarily. [*Id.* at p. 17-18].

If done knowingly and voluntarily, a criminal defendant may, by the terms of the plea agreement, waive his right to file a direct appeal and his right to collaterally attack his conviction and sentence under Section 2255. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001). A waiver is a "relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Even a constitutional right may be waived if the defendant did so knowingly and voluntarily when entering into a plea agreement. *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). A waiver in a plea agreement is considered knowing and voluntary if the defendant testifies that his guilty plea was not coerced and that he reviewed and understood the agreement's terms. *Davila*, 258 F.3d at 451.

A court is not required to fully review the merits of a § 2255 motion if the movant's claim that his plea was invalid has "no basis" in the record. *United States v. Thornton*, 2007 WL 1741780, at *7 (E.D. Ky. May 25, 2007) (citing *Acosta*, 480 F.3d at 421). If the movant's claim that his plea was not knowing or voluntary has no legal or factual basis, "the Court may then enforce the waiver provision and preclude further review of these arguments." *Id.* Only where a movant "articulate[s]

a basis for attacking the validity of his plea" may he escape the consequences of the waiver provision. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). In other words, a movant who has otherwise waived the right to collaterally attack his conviction and sentence, must "raise[] a challenge that goes to the validity of his waiver, such a claim that the waiver was involuntary or the product of ineffective assistance of counsel." *Id.*

The facts clearly indicate that the broad waiver precludes any arguments concerning his *Frank*'s hearing and silver platter challenges in this action. In his written plea agreement, Cooper expressly waived his right to appeal and the right to collaterally attack his guilty plea, conviction, and sentence. [R. 188 at ¶ 8]. The facts also indicate that Cooper's plea to Counts 1 and 4 were knowing and voluntary at his rearraignment, where he swore under oath that he reviewed his plea agreement and understood the terms he was entering into. [R. 199 at p. 8]. As the facts concerning the rearraignment show, the District Judge also reviewed the contents of the collateral attack waiver with Cooper at his rearraignment and specifically advised him of his rights as required by Federal Rules of Criminal Procedure 11. [*Id.* at p. 13-18]. In response to the District Judge's inquiry into the conduct committed by Cooper, he pled guilty to Counts 1 and 4. [*Id.* at p. 17].

It is well-established precedent that a defendant is bound by the statements he makes in response to a district judge's scrupulous Rule 11 inquiry. *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993). Accordingly, Cooper's mere assertions of error concerning a *Frank*'s hearing and the silver platter doctrine do not establish that his waiver was invalid, involuntary, or the product of his attorney being ineffective as his counsel. Instead, Cooper's claims are merely challenges to the sufficiency of the evidence because they challenge the evidence the government used to indict Cooper. In other words, following Cooper's unsuccessful appeal, Cooper wants to avoid the binding sentence he bargained for by challenging the evidence the United States was

going to use to build its case. Either way, this assertion is barred under the clear language of the plea agreement. [R. 188 at ¶ 8].

Any "attack on the sufficiency of the evidence that might have been produced at trial [is] clearly waived by [a] defendant's guilty plea." *United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987). "[W]here the court has scrupulously followed the required procedures, the defendant is bound by his statement in response to the court's inquiry." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of veracity." *Id.* The Rule 11 colloquy is designed to ensure that a defendant's plea is knowing and voluntary. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988) (stating "Rule 11 of the FED. R. CRIM. P. has been carefully drafted and amended to the end that the guilty plea process be precise to make certain that a defendant pleading guilty understands the nature of his applicable constitutional rights, that his plea of guilty is voluntary with the full understanding of the nature of the crime charged and the consequences of his guilty plea and that there is a factual basis for the crime to which the plea is being offered"). Therefore, these claims are clearly without merit and it is recommended that they be denied. *See United States v. Gibney*, 519 F.3d 301 (6th Cir. 2008) (stating that a valid waiver bars an appeal); *see also United States v. Harper*, 2008 WL 4829872 (E.D.KY Nov. 5, 2008) (rejecting § 2255 claim that defendant would never have pleaded guilty but for counsel's false promises where nothing in the record suggested that defendant misunderstood the scope of his waiver of his right to appeal and collaterally attack his conviction).

**Ground 4: Ineffective Assistance of Counsel Claims:**

Cooper's final ground asserts six grounds of ineffective assistance of counsel against Bertram Johnson, Matthew Malone, and John Tennyson: (1) "failing to recognize the strength and legal significance of [the] body cam footage"; (2) "failing to investigate who actually wore [the]

body cam"; (3) "failing to become . . . familiar[] with the physical appearance of key government witnesses, in order to legally attest who stated what, where in the police reports and compare these things to facts actually depicted from body cam evidence"; (4) "failing to cross key gov. witnesses with actual body cam footage"; (5) "failing . . . to view and recognize the fact that there were two officers responding from the police station, who both travelled a well known street . . . and not realize these officers passed directly by the [streets] outlined in the search warrant affidavit"; and (6) "failing . . . to question . . . [the] dispatch log entries." [R. 227 at p. 28-32].

To prevail on ineffective assistance of counsel under Section 2255, Cooper must satisfy two essential elements: (1) deficient performance and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable"). First, to prove deficient performance, Cooper must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show representation fell below an objective standard of reasonableness, the petitioner must articulate specific acts or omissions to show how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690.

Second, Cooper must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694-95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (citing *Strickland*, 466 U.S. at 696)). "When deciding ineffective-assistance claims, courts need not address both components of

the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

As the United States noted in its response, all six of Cooper's arguments are premised on his disagreement with how his counsel litigated his suppression claim. Since Cooper raises blanket claims of ineffective assistance of counsel against three of his former attorneys, it is worth mentioning their roles in his case.

Bertram Johnson appeared initially as Cooper's retained counsel at his initial appearance and arraignment. [R. 8]. On May 16, 2017, Johnson moved to withdraw as Cooper's counsel, CJA counsel was drawn for Cooper (Matthew Ryan Malone), a status conference was held, and Johnson's motion to withdraw was granted. [R. 20, 23]. Malone served as Cooper's counsel in his first motion to suppress, including the evidentiary hearing that followed. *See* [R. 24, 38]. By July 17, 2017, Malone also moved to withdraw as counsel, a hearing was held, and Malone was relieved of his duties as Cooper's counsel. [R. 43, 46]. Cooper expressed his desire to proceed *pro se* in his

own defense, but the District Court ordered CJA counsel be drawn again for Cooper so a mental evaluation could be completed for Cooper. [R. 46 at ¶ 2]. George Hayworth was selected. On November 9, 2017, Cooper was found competent to stand trial, and Hayworth was dismissed as counsel. [R. 68]. At this point, Cooper proceeded *pro se* until Cooper retained John Tennyson as his attorney. [R. 168]. Once Tennyson's request to proceed *pro hac vice* was granted, he filed Cooper's second motion to suppress, based on newly discovered evidence that officers pulled a different person around the same time the shots were fired. [R. 168-69, 176]. Following Cooper's rearraignment and sentencing, Tennyson filed a notice of appeal but was subsequently terminated as counsel. [R. 187, 192, 197, 198].

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious . . . in order to demonstrate actual prejudice." *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Cooper fails to make such a showing.

First, Cooper's first two allegations that his counsel (Malone), failed to recognize "the strength and legal significance of [the] body cam footage", failed "to investigate who actually wore [the] body cam", failed "to become . . . familiar[] with the physical appearance of key government witnesses, in order to legally attest who stated what, where in the police reports and compare these things to facts actually depicted from body cam evidence", and failed "to view and recognize the fact that there were two officers responding from the police station, who both travelled a well known street . . . and not realize these officers passed directly by the [streets] outlined in the search warrant affidavit"  are simply unsupported. The record shows that Malone introduced the body worn camera footage and internal police reports during the evidentiary hearing. *See* [R. 37 (exhibit

and witness list); R. 202 at p. 46, 68-69 (suppression hearing)]. Malone also cross-examined all three officers, utilizing exhibits during cross-examination, to specifically question the officers about the timing of the events, the alleged inconsistencies in the dispatch logs, and the traffic stop of the other vehicle. [R. 202 at p. 14-31 (Officer Palmer cross-examination), 42-46 (Officer Finley cross-examination), 59-68 (Officer Brill cross-examination); R. 184 at p. 3 ("officers testified extensively about the second vehicle stopped during the [original] suppression hearing.")]. Thus, Malone did exactly what Cooper claims he failed to do and Cooper's assertions of ineffective assistance of counsel on these grounds are simply without merit.

Second, the Sixth Circuit has also held that the record does not support Cooper's argument that Palmer detained him for thirty-seven minutes after hearing shots fired or that Brill stopped another vehicle closer to the area where the shots were heard. [R. 206 at p. 4]. Cooper's contentions that the body camera footage and the dispatch logs are false are simply unsupported by the record. All three officers testified to the timing of the events leading up to Cooper's detention. *See generally,* [R. 202]. The officers also testified that the other vehicle was not as close to the shots fired as Cooper and that the stop was unrelated to the gun shots. [*Id.* at p. 20, 43, 60]. The District Court and the Sixth Circuit agreed with the witnesses, after reviewing the evidence. [R. 184 at p. 4 ("The officers ultimately determined that the vehicle was not related to the investigation and a warning was issued to the driver."); R. 206 at p. 4 ("nothing in [the dispatch logs] or elsewhere in the record does much to refute Palmer's unequivocal testimony that he heard the gunshots 'less than a minute' before he saw Cooper.")].

Finally, Cooper's allegations generally alleging that his attorneys failed to pursue the unsubstantiated theories does not meet the standard in *Strickland*. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (stating that proving prejudice under *Strickland* involves an "exacting

standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different). The other traffic stop and the timestamp on the dispatch log are not material facts. His attorneys' decision to briefly investigate these facts, and finding they offered little support to Copper's suppression arguments, and then opting to pursue other arguments (i.e., the duration of Cooper's detention and the three *Terry* frisks) was a strategic decision which Cooper does not demonstrate was "so ill chosen that it permeates the entire [proceeding] with obvious unfairness." *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008); *Michel*, 350 U.S. at 101 (decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel).

The decision of counsel to choose one strategy over another is "virtually unchallengeable." *Leonard v. Warden, Ohio Penitentiary*, 846 F.832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)). "Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). Mere speculation that an alternative strategy would have altered the judicial outcome is not sufficient. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (stating the defendant's "speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*"). Likewise, "[c]ounsel does not fall below [the *Strickland*] standard by failing to prevail when arguing a debatable point to the court." *Id.* at 644. Therefore, his ineffective assistance of counsel claims must fail.

Nevertheless, even if his counsels' performances were deficient, Cooper does not show that it would have affected the outcome of his case. *Hinkle v. Randle*, 271 F.3d 239, 345 (6th Cir. 2001) (stating that proving prejudice under *Strickland* involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different). This issue has been extensively dealt with by the District Court and the Sixth Circuit. [R. 187, 206]. Cooper's "conclusory and perfunctory" arguments regarding how Malone should have argued or emphasized certain evidence are "insufficient to overcome the presumption of reasonable professional assistance." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012). Therefore, beyond Cooper's conclusory assertions, there is no evidence in the record on which to find the outcome of his case was prejudiced. *See Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (finding that defendant's ineffective-assistance claim was waived where he failed to "articulate how [counsel's] actions specifically were deficient or how they specifically prejudiced the outcome of the case").

In sum, Cooper does not establish deficient performance or prejudice under his fourth ground in his motion to vacate. [R. 227 at p. 8]. Accordingly, it is recommended that Cooper's assertions of ineffective assistance of counsel be denied.

**<u>Cooper's Additional Discovery Requests</u>**:

Cooper is currently serving a 120-month term of imprisonment following his conditional plea agreement on Counts 1 and 4 of the indictment for possession with intent to distribute heroin and possession of a firearm in furtherance of drug trafficking. [R. 188, 191, 192, 200]. In addition to his motion to vacate under § 2255, Cooper also seeks leave to conduct discovery. [R. 232, 243]. Under Cooper's first request, he seeks photos of the scene and the identity of the seven Lexington

Police Offices. [R. 232]. Cooper's second request asks the Court for supplemental discovery of the "ALI Database" evidence. [R. 243].

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Pursuant to Rule 6(a) of the Rules Governing § 2255, the movant is required to show good cause before a judge may allow a party to conduct discovery. To show "good cause," the burden is on the petitioner to "present 'specific allegations'" that give the Court "'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *United States v. Atkin*, 80 F.Supp.2d 779, 785 (N.D. Ohio Jan. 7, 2000) (citing *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991)); *see also Bracy*, 520 U.S at 908-09. Generalized or conclusory statements regarding the possibility of the existence of discoverable material will not be sufficient to establish the requisite good cause. *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). The "district court does not abuse its discretion in denying a habeas petitioner's request for discovery, where the request falls more in the category of a fishing expedition masquerading as discovery." *Burns v. Lafler*, 328 F.Supp.2d 711, 718 (E.D. Mich. July 26, 2004) (quoting *Stanford*, 266 F.3d at 460). If the requested discovery is merely cumulative or otherwise immaterial, the court will also not err in denying the petitioner's request for discovery. *Williams*, 380 F.3d at 976-77.

Cooper does not meet his burden. Cooper cannot show good cause by setting out specific allegations that give the Court reason to believe that if the facts are fully developed as Cooper anticipates, that he will be able to demonstrate that he is entitled to relief for his requests in his motion to vacate. In his motion for discovery, Cooper seeks photographs of the shell casings and the identities of seven officers at the scene of his detention and arrest. [R. 232 at p. 1-2]. However,

as the United States indicated, Cooper provides no explanation of his need for these photographs, which were provided to him during discovery. [R. 271 at p. 15]. In other words, he generally alleges that he believes discovery will support his claims by helping prove his innocence in this matter. [R. 232 at p. 3]. But his conclusory assertion does not amount to the kind of specific allegations necessary to show good cause.

As far as his request for supplemental discovery, Cooper again provides no explanation for his need of the evidence. He contends that "the ALI database will reveal the suppressed evidence by same authorities that entitles [Cooper] to immediate release." Cooper apparently received some evidence pursuant to the Kentucky Open Records Act as it relates to a 911 call. [R. 243]. But, again, his conclusory assertion does not amount to the kind of specific allegations necessary to show good cause.

Furthermore, as described above, Cooper's claims for § 2255 are without merit. Subsection (a) of Rule 6 may be limited by the Court. *Harrison v. Nelson*, 394 U.S. 286, 295 (1969) (stating that the broad discovery provisions of the federal rules do not automatically apply in § 2255 proceedings). The Supreme Court explained that the existence of good cause will be established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, [if so then] it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harrison*, 394 U.S. at 300. There are no factual issues in dispute, the resolution of which would aid Cooper. As described above in detail, Cooper voluntarily admitted guilt to the offense in both his plea agreement and in open court at his rearraignment. [R. 187, 188]. Therefore, it is recommended that Cooper's discovery requests be denied because he fails to meet his burden of good cause.

**<u>Cooper's Evidentiary Hearing Request</u>**:

Cooper also seeks an evidentiary hearing on his Section 2255 motion to develop facts associated with his allegations of ineffective assistance of counsel. [R. 281]. Section 2255 requires a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015). Defendant's burden in establishing that he is entitled to an evidentiary hearing is "relatively light." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). However, a "full blown evidentiary hearing" is not required in every case. *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (citing *Todaro*, 982 F.2d at 1030). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotations omitted). If a habeas petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013).

Here, Cooper conclusively requests an evidentiary hearing, merely citing boilerplate language of the law as it surrounds evidentiary hearings. [R. 281 at p. 1]. However, an evidentiary hearing is not required in this situation because there are no factual disputes present and the record shows that Cooper is not entitled to relief on his ineffective assistance of counsel claim. The bulk of Cooper's claim revolves around the facts that have been well-established in previous evidentiary hearings on his motion to suppress. *See generally* [R. 281]. Thus, Cooper does not proffer any argument to show that another hearing is necessary. Therefore, the Court finds that no evidentiary hearing is needed to resolve this issue because there are no disputed issues of fact and recommends that his request be denied.

## IV.  CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x. 771, 774 (6th Cir. 2005). For dismissals on procedural grounds, as to when a Certificate of Appealability to be issued, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Here, Cooper has not made a "substantial showing" as to any claimed denial of his rights. Moreover, the Court also believes that reasonable jurists would not find its determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability.

## V.  RECOMMENDATION

Accordingly, having reviewed Cooper's current motion to vacate [R. 220, 227] in accordance with Rule 10 of the Rules Governing Section 2255 Habeas Cases, IT IS RECOMMENDED that:

1.  Cooper's motion to vacate his sentence under § 2255 [R. 220] be DISMISSED WITH

PREJUDICE;

2.   Cooper's motions for discovery [R. 232, 243] be DENIED;

3.   Cooper's request for an evidentiary hearing [R. 281] be DENIED;

4.   A Certificate of Appealability be DENIED as to all issues raised, should Cooper so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed August 31, 2020.

Signed By:

*Edward B. Atkins*  ЄβＡ

United States Magistrate Judge